**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MARK W. LEVOLA,

Petitioner,

v.

NEW YORK STATE DIVISION OF PAROLE,

Respondent.

No. 12-CV-1185
(GTS/CFH)

---

**APPEARANCES:**                          **OF COUNSEL:**

MARK W. LEVOLA
Petitioner Pro se
495 Button Street
Sharon Springs, New York 13459-3714


HON. ERIC T. SCHNEIDERMAN          MICHELLE ELAINE MAEROV, ESQ.
Attorney General for the                Assistant Attorney General
  State of New York
Attorney for Respondent
120 Broadway
New York, New York 10271


**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Petitioner pro se Mark W. Levola ("Levola") is currently under post-release supervision

of the New York State Division of Parole.[2] On February 10, 2004, Levola pled guilty to

---

[1] This matter was referred to the undersigned for Report and Recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] The Court notes that in January 2013, the Supreme Court stated in dicta, "federal
habeas petitioners, by definition, are incarcerated, not on probation." Ryan v. Gonzales, –
U.S. –, 133 S. Ct. 696, 707 (2013). However, Second Circuit precedent suggests persons
released to post-release supervision may still be eligible for habeas relief if conditions

Course of Sexual Conduct Against a Child in the first degree. Pet. (Dkt. No. 1) ¶¶ 2–3; Tr. (Dkt. No. 13-5) at 20:14–20.[3] Levola was sentenced to a determinate prison term of seven years with five years of post-release supervision. Pet. ¶¶ 2–3; Tr. at 85:13–86:17. On February 26, 2011, Levola was conditionally released on parole.[4] Levola now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence. Pet. ¶ 12. For the following reasons, it is recommended that the petition be denied.

## I. Background

## A. Introduction

On June 15, 2003, Levola's wife at the time complained to non-party Catalano, the road patrol sergeant of the Montgomery County Sheriff's Department, that Levola had sexual contact with her biological daughter, who was Levola's stepdaughter and a minor. Tr. at 4:2–6:8. Catalano informed non-party Undersheriff Smith of this complaint. Id. at 6:9–25.

Catalano went to Levola's residence and asked Levola to answer certain questions at the police station. Tr. at 9:13–10:25. At the Sheriff's Department, Catalano sat across from

---

imposed are sufficiently restrictive. See Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 894 (2d Cir. 1996) (citation omitted). Accordingly, because there is no certainty as to whether the Supreme Court's language is binding, and Levola is subjected to parole conditions and Sex Offender Registration Act requirements, see subsection I(D) infra, this Court follows Second Circuit precedent and considers Levola to be in custody for purposes of this habeas petition.

   [3] The page numbers following "Tr." refer to the pagination of the header numbers generated by CM/ECF, not the individual transcripts.

   [4] See DOCCS, INMATE POPULATION INFORMATION SEARCH, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000 (lasted visited Jan. 9, 2014).

Levola in a square office with glass windows and administered the Miranda warnings.[5] Id. at 12:3–13:4. Levola answered that he understood his rights and was willing to speak with Catalano. Id. at 14:24–15:9. Catalano proceeded to inform Levola of the allegations against him to which Levola responded that he had only "innocent" contact with his stepdaughter such as blowing on her stomach. Id. at 15:10–16:3.

At some point, Smith called Catalano and learned that Levola had been Mirandized. Tr. at 38:23–40:25. Smith arrived and took over the interview with Catalano walking in the office intermittently. Id. at 16:4–22, 42:2–7. Levola broke down, began to cry, and told Smith what happened, which Smith memorialized into writing. Id. at 41:10–25, 42:12–19. Smith read Levola the Miranda warnings and had Levola initial and sign the statement. Id. at 42:25–43:8, 44:6–21, 45:10–47:13. Levola acknowledged that he signed the confession without coercion, duress, or undue influence. Id. at 44:22–45:9. On June 16, 2003 at 8:30 a.m., Levola was arrested. Id. at 16:23–17:7.


## B. Huntley Hearing[6]

On November 6, 2003, at the Montgomery County Court, a Huntley hearing was conducted for Levola's confession, during which time Catalano and Smith testified. Tr. at 4:6–66:10. Levola moved to suppress the confession, arguing it was given under undue

---

[5] Miranda v. Arizona, 384 U.S. 436, 444 (1966) (5-4) (holding "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.").

[6] A Huntley hearing is requested to determine the voluntariness of a defendant's confession. Rivera v. Warden, Attica Corr. Facility, 431 F. Supp. 1201, 1204 (E.D.N.Y. 1977) (citing People v. Huntley, 15 N.Y.2d 72 (1965)).

3

influence because he was picked up at 1:00 a.m., was offered only two breaks, and there was no written proof that he was Mirandized until 8:30 a.m. Id. at 66:15–71:6.

The County Court denied Levola's motion to suppress. Tr. at 80:6–7. First, the County Court concluded that Levola was not entitled to Miranda warnings. Id. at 79:7–9. The County Court found that Levola was not arrested at his home, despite the fact that Catalano may have had probable cause to do so. Id. at 77:24–78:3. Further, Catalano's questions "were merely investigatory and explanatory [such that] a reasonable person innocent of wrongdoing would not have thought that he or she was in custody under the circumstances." Id. at 78:4–9. Levola voluntarily accompanied Catalano to the police station and the nature of the transport was not coercive. Id. at 78:11–14. The questioning was investigatory and not accusatory and Levola did not protest the questioning. Id. at 78:14–16. Furthermore, Levola was never handcuffed in the police car. Id. at 78:22–24. Moreover, being advised his constitutional rights did not place Levola in custody, nor did the fact that he was a prime suspect. Id. at 78:25–79:6. In any event, the County Court noted that Miranda warnings were administered, Levola knowingly waived those rights, and no statements were taken from him prior to the administration of the Miranda warnings. Id. at 78:10–13, 79:15–20. The County Court found that prosecution had met its burden of proof and established the legality of police conduct and waiver of Miranda rights. Id. at 79:21–25.

### C. Plea Proceeding

On January 5, 2004, Levola retained new counsel for the plea and sentence proceedings. Dkt. No. 16-3 at 23. Levola's plea proceeding took place on February 10, 2004. Tr. at 83–115. The County Court noted that it received two psychiatric reports for

4

Levola, both indicated that Levola did not, as a result of mental disease or defect, lack the capacity to understand the proceedings against him.  Id. at 87:22–88:8.  Plea counsel was familiar with the reports and did not seek a hearing on them.  Id. at 88:15–21.

Levola acknowledged that he understood the nature of the proposed plea agreement, had no questions, and had enough time to confer with plea counsel and family members.  Tr. at 88:24–90:3.  Levola further acknowledged that he:  (1) was not coerced into pleading guilty; (2) was not under the influence of alcohol, drugs, or other medication; and (3) understood his guilty plea waived his rights to trial by jury, require prosecution to prove guilt a beyond reasonable doubt as to every element of the offense, confront accusers, remain silent, testify at trial and call witnesses, and raise a defense.  Id. at 91:2–94:4.

Levola stated that he had enough time to speak with plea counsel and waived his right to appeal to a higher court, including the County Court's ruling on the Huntley hearing.  Tr. at 94:5–96:25.  Levola and plea counsel signed the appeals waiver.  Id.  The County Court confirmed with Levola that he understood certain issues cannot be waived but they must be appealed within thirty days of sentence date.  Id.  Levola answered that he was pleading guilty because he was in fact guilty and was doing so freely and voluntarily.  Id. at 97:1–17.  Levola was satisfied with plea counsel's representation, had no questions for the County Court or plea counsel, had reviewed his confession, and verified that the signature on the confession was accurate.  Id. at 97:1–17, 99:3–10.  Levola pled guilty to, having engaged in two or more acts of sexual conduct, at least one act of sexual intercourse, deviate sexual intercourse, or aggravated sexual contact with a child less than eleven years old.  Id. at 97:18–99:2.

5

## D. Sentencing Proceedings

Levola was sentenced on April 9, 2004 to the seven years of imprisonment, five years of post-release supervision, and Sex Offender Registration Act requirements.  Tr. at 116–144.  Levola indicated he had no questions and had enough time to speak with plea counsel.  Id. at 120:18–23.  Levola stated, "I just want to say I'm very sorry about the things that happened.  I mean, I just want to get on with my life and hope everything, you know, turns out for the best."  Id. at 126:25–127:4.  The County Court noted that psychiatric reports showed Levola was likely to have a personality disorder but Levola denied any significant mental health history or substance problems.  Id. at 128:20–129:8.  Levola acknowledged having signed an appeals waiver.  Id. at 139:14–21.

## E. New York Criminal Procedure Law ("CPL") § 440.10

On February 15, 2011, Levola filed a pro se CPL § 440.10 motion to vacate the judgment.  Dkt. No. 1-1 at 1–8.  Levola contended that the police fabricated the confession against him, prosecution introduced that fabricated evidence to the grand jury, and the County Court was aware that the confession was defective.  Id. at 2–3, 5–6.  Further, Levola claimed that his due process rights were violated and he received ineffective assistance of counsel who coerced him into taking the plea.  Id. at 3, 7.  On April 11, 2011, the Montgomery County Court denied Levola's CPL § 440.10 motion.  Dkt. No. 1-1 at 9.

On May 9, 2011, Levola appealed the County Court's decision to the Appellate Division, Third Department.  Dkt. No. 1-1 at 12–20.  First, Levola contended that his plea was involuntary and made under duress.  Id. at 13.  Second, Levola argued that he received ineffective assistance of plea counsel because plea counsel failed to file a notice of appeal

6

on his behalf, inform him certain issues could not be appealed, and coerced him into taking the plea. Id. at 13–14. Levola was unaware of his remaining appeal rights until the day of his sentence. Id. at 13. Third, the County Court erred in accepting his guilty plea when he notified it that he did not review his confession because he did not have reading glasses at the time. Id. at 14, 20. However, this allegation is not contained in the plea or sentencing transcripts. On June 23, 2011, the Appellate Division denied Levola's application for leave to appeal. Dkt. No. 1-1 at 23.

## F. Petition Before This Court

In his petition dated July 24, 2012,[7] Levola contends that: (1) the confession and Miranda waiver were fabricated as he could not read without glasses and did not speak to Smith; (2) prosecution committed misconduct when it presented the perjured victim's testimony[8] and a fabricated confession to the grand jury while denying him an opportunity to testify before it; (3) the County Court erred in permitting such evidence to be admitted; (4) he received ineffective assistance of hearing counsel who was unavailable to him and failed to argue that his confession was fabricated; and (5) he received ineffective assistance of plea counsel who failed to argue the same, failed to bring his medical conditions to the

---

[7] Pro se petitioners are deemed to have filed their habeas petitions on the date they turned them over to prison officials for mailing. See Houston v. Lack, 487 U.S. 266, 270 (1988); Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "prisoner mailbox rule" to habeas petitioners), cert. denied, 534 U.S. 886 (2001). Out of caution, this Court employs July 24, 2012, the date on Levola's petition, as the earliest possible date upon which Levola could have turned over the petition to prison officials for mailing.

[8] In his application for leave to appeal his CPL § 440.10 motion and traverse, Levola details allegations of a frame-up against the victim's biological father. See generally Dkt. No. 1-1 at 18; Traverse (Dkt. No. 16).

7

County Court's attention, ignored his pleas of innocence, coerced him into pleading guilty,

failed to explain to him the consequences the appeals waiver, and coached him on

answering questions at the plea proceeding.  Pet. at 6–12.  Levola maintains that his poor

health hindered his ability to timely file his petition.  Id. at 17.  Levola seeks to be

exonerated.  Id. at 18.

## II.  Timeliness

## A.  Commencement Date

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132,

110 Stat. 1214 (1996) ("AEDPA"), a one-year statute of limitations period applies to the

filing of federal habeas corpus petitions "by a person in custody pursuant to the judgment of

a State court."  28 U.S.C. § 2244(d)(1); Cook v. N.Y. State Div. of Parole, 321 F.3d 374,

279–80 (2d Cir. 2003).  The statutory limitation period begins to run from the latest of four

events:

> (A) the date on which the judgment became final by the
> conclusion of direct review or the expiration of the time for
> seeking such review;
>
> (B) the date on which the impediment to filing an application
> created by State action in violation of the Constitution or laws of
> the United States is removed, if the applicant was prevented
> from filing by such State action;
>
> (C) the date on which the constitutional right asserted was
> initially recognized by the Supreme Court, if the right has been
> newly recognized by the Supreme Court and made retroactively
> applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of

due diligence.

28 U.S.C. § 2244(d)(1).

In this case, the AEDPA limitation period began to run when Levola's judgment of conviction became final. The record is devoid of any indication or allegation that state action impeded or prevented Levola from appealing his conviction nor is there any assertion of a newly recognized constitutional right. 28 U.S.C. § 2244(d)(1). Further, the facts surrounding Levola's claims were known to him at the time of his sentencing proceeding. See Rivas v. Fischer, 687 F.3d 514, 548–50 (2d Cir. 2012) ("[I]f new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a 'factual predicate' . . . under § 2244(d)(1)(D)."). This is true even for the claim that plea counsel allegedly failed to advise Levola the consequences of an appeals waiver.[9] Dkt. No. 1-1 at 13.

Levola's petition was untimely filed. He was sentenced on April 9, 2004. Since Levola did not file a direct appeal, his judgment became final thirty days thereafter on May 10, 2004.[10] N.Y. CRIM. PROC. LAW § 460.10(1) ("A party seeking to appeal . . . a sentence . . . must, within thirty days after imposition of the sentence . . . file with the clerk of the criminal court in which such sentence was imposed . . . a written notice of appeal."); see Gonzalez v. Thaler, 132 S. Ct. 641, 653–54 (2012); Bethea v. Girdich, 293 F.3d 577, 578 (2d Cir.

---

[9] In his May 9, 2011 appeal of his CPL § 440.10 motion, Levola indicated he learned of plea counsel's alleged failure to advise him the consequences of his appeals waiver on sentencing day. Dkt. No. 1-1 at 13. Assuming Levola could not have discovered the factual predicate of this claim with due diligence on sentencing day, Levola was aware of it on May 9, 2011. If the AEDPA limitation began to run on May 9, 2011, Levola's petition remains untimely since he filed it on July 24, 2012.

[10] The Court takes judicial notice that May 9, 2004 fell on a Sunday.

2002) (citing N.Y. CRIM. PROC. LAW § 460.10(1)).  Levola's time to file his habeas petition expired on May 10, 2005.  28 U.S.C. § 2244(d)(1).  Levola's petition is dated July 24, 2012, which is more than seven years after the expiration date.  Thus, Levola's petition is untimely unless it was tolled.

## B.  Statutory Tolling

The AEDPA statutory limitation may be tolled when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ."  28 U.S.C. § 2244(d)(2).  "[A]n application for state review is 'pending' until it has achieved final review through the state's post-conviction procedures." McPherson v. Burge, No. 06-CV-1076 (GTS/VEB), 2009 WL 1293342, at *5 (N.D.N.Y. 2009) (citations omitted) (attached to this Report-Recommendation).  However, when the state application has achieved final review, the date from which the statute of limitations begins to run does not reset.  Bethea, 293 F.3d at 578 (citing Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.), cert. denied, 531 U.S. 840 (2000)).  Here, Levola filed his CPL § 440.10 motion on February 15, 2011, which is more than five years after the AEDPA limitation period expired.  Since no post-conviction motion was filed during the pertinent limitation period, statutory tolling does not apply to save Levola's untimely petition.

## C.  Equitable Tolling

A petitioner who has filed a petition past the one-year statute of limitation and does not have sufficient statutory tolling may still have his petition considered through equitable tolling.  See Smith, 208 F.3d at 17.  The federal habeas court must ask "whether the

10

petitioner has been pursuing his rights diligently and whether some extraordinary circumstance stood in his way." Ryan v. Gonzales, – U.S. –, 133 S. Ct. 696, 704 n.6 (2013) (internal quotation marks omitted) (quoting Holland v. Florida, 130 S. Ct. 2549, 2562 (2010)); see also Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001) (same). Petitioner is required to "demonstrate a causal relationship between the extraordinary circumstances . . . and the lateness of his filing . . . ." Hizbullahankhamon, 255 F.3d at 75 (internal quotation marks and citation omitted). Pro se status or ignorance of the law does not merit equitable tolling. Smith, 208 F.3d at 18.

Equitable tolling does not apply to the instant petition. Levola proffers no information, and the record does not reflect the contrary, on how he pursued his appeal rights diligently. He contends that his "years" of poor health hindered his ability to timely prepare his petition, which took longer than a month to complete. Pet. at 17. Specifically, Levola alleged that he was hospitalized in December 2011 and January 2012. Id. However, Levola fails to proffer evidence showing that his health affected his ability to timely file a habeas petition during the relevant limitation period. Levola provides a report dated March 18, 2004 showing he experienced problems with his urine, groin, neck, and back. Yet Levola does not demonstrate how such issues caused delay in filing his habeas petition. The absence of a causal connection between the alleged extraordinary circumstances and delayed filing renders equitable tolling inapplicable.

Moreover, Levola does not proffer new evidence establishing his actual innocence. McQuiggin v. Perkins, – U.S. –, 133 S. Ct. 1924, 1928 (2013) (5-4) (holding if actual innocence is proved, it serves as a gateway through which a petitioner may pass and overcome the AEDPA statute of limitations); see also Rivas v. Fischer, 687 F.3d 514,

548–50 (2d Cir. 2012) (finding habeas courts may invoke equitable authority to excuse a late habeas petition filing where a petitioner makes a "compelling showing of actual innocence"). Levola's allegations involving perjured victim's testimony and falling victim to a frame-up[11] are neither new nor supported by any evidence before the Court. Thus, Levola's petition remains untimely filed.

Accordingly, Levola's petition should be denied because it is time-barred.[12]

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Levola's petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED**.

It is further **RECOMMENDED** that no certificate of appealability should be issued with respect to any of Levola's claims as Levola has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

---

[11] See note 8 supra.

[12] The Court notes that Respondent contends Levola has failed to exhaust state remedies and raised meritless claims. Because the action is time-barred, the Court does not reach these issues.

**REVIEW.** <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  January 9, 2014
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge